47 N.J. Super. 255 (1957)
135 A.2d 670
JOHN J. BARTON, PLAINTIFF-APPELLANT,
v.
RODNEY L. MARLOW, GEORGE M. MILLS, INC., A CORPORATION, AND SUN INDEMNITY COMPANY OF NEW YORK, A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1957.
Decided November 4, 1957.
*257 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John V.R. Strong argued the cause for plaintiff-appellant (Messrs. Strong and Strong, attorneys).
Mr. Philip Blacher argued the cause for defendants-respondents (Messrs. Rafferty and Blacher, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
Plaintiff brought this action against the defendants to recover for negligent failure to keep him insured for automobile damage liability, as a result of which he became personally accountable on a judgment for damages in connection with an accident in which he was involved. The action was involuntarily dismissed by the trial court after completion of the plaintiff's case, but this appeal brings in contention the correctness of that action in respect only to the defendant Marlow.
From the testimony on plaintiff's behalf a jury could have found the following facts. Plaintiff purchased a used Chevrolet car from Perrine Pontiac, an automobile dealer, in May 1949. The defendant Marlow was general manager of the seller and handled the transaction. He was also an insurance broker and sold insurance as a side line. Plaintiff purchased liability insurance through him for the car, effective July 12, 1949, and defendant arranged renewals of the policy for the years commencing July 12, 1950 and July 12, 1951. This action involves a failure of the defendant to see to the effectuation of coverage for the year beginning *258 July 12, 1952. Payment for the insurance was on credit, involving an arrangement between plaintiff, Perrine Pontiac and defendant, whereby plaintiff was allowed general credit by Perrine Pontiac for insurance, gasoline, oil and repair parts, and the latter paid defendant for the insurance premiums out of plaintiff's credit account. Each year, about renewal time, plaintiff would ask defendant to renew the insurance, defendant would assure him it was taken care of, and in August of each year through 1951 he received a policy in the mail. The Chevrolet was traded in for a Pontiac in February 1952.
Plaintiff testified that in May or June 1952, contemplating a vacation trip with two other persons, and desiring to be assured of renewal of the insurance, he spoke to defendant on two occasions at Perrine Pontiac and asked him about renewing the policy, and defendant said, "Don't worry about it, it is covered, I have got you covered." On August 14, 1952 plaintiff was in an accident, and defendant helped him fill out and mail an accident report to Sun Indemnity Company. The company sent the report back to plaintiff, informing him that he was not covered, that "they had cancelled my policy." He immediately took the matter up with defendant, who said, "I told them not to cancel that policy. I don't know what is the matter with them."
On motion at the end of plaintiff's case the trial court entered an involuntary dismissal on grounds both of contributory negligence of the plaintiff and the failure "to establish the care and skill required of an insurance agent, or insurance broker," citing Milliken v. Woodward, 64 N.J.L. 444 (Sup. Ct. 1900), and Grossman v. Calonia Land & Imp. Co., 103 N.J.L. 98 (E. & A. 1926). Our scrutiny of the printed record satisfies us that the motion should have been denied and the defendant required to submit his defense.
The theory of the complaint and pretrial order was that defendant had negligently failed to perform his undertaking to provide liability insurance on plaintiff's automobile as of a period inclusive of the date when the accident involved in this case occurred. Applying the rule that upon *259 a motion for involuntary dismissal at the end of plaintiff's case he must be accorded the benefit of an assumption of the truth of all of the evidence in his favor, aided by all legitimate favorable inferences therefrom, Buchner v. Erie Railroad Co., 17 N.J. 283 (1955), it could have been found that defendant undertook as an insurance broker or agent to see to it that liability insurance would be in effect on plaintiff's car at the time when plaintiff had his accident and that there was carelessness or inattention in the execution of the undertaking, proximately leading to the injurious non-coverage status. Prima facie liability would then ensue as a matter of law because of the violation, to plaintiff's injury, of the duty, arising out of defendant's undertaking, to exercise reasonable skill, care and diligence in effecting the insurance. Marano v. Sabbio, 26 N.J. Super. 201 (App. Div. 1953); Annotation, 29 A.L.R.2d 171, 198 (1953); cf. Schustrin v. Globe Indemnity Co. of New York, 44 N.J. Super. 462 (App. Div. 1957).
It is, moreover, the rule that where one undertakes to effect insurance he impliedly undertakes to give notice to the applicant in the event of his failure or inability to procure it. Marano v. Sabbio, supra (26 N.J. Super., at p. 206). There were intimations in the course of plaintiff's case that the 1951-1952 policy had been cancelled by the company prior to its expiration, although it is not clear for what reason. The jury could have concluded that if there was a prior cancellation of the policy, exercise of reasonable attention to the matter on defendant's part would have apprised him of that fact, and that if he could not then get the policy reinstated, due diligence would have led him to notify the plaintiff in time to enable the latter to obtain insurance elsewhere prior to the accident. A similar finding could have been made if the difficulty was an inability by defendant to effect a renewal of the policy at its expiration.
We direct our attention to the grounds for dismissal relied upon by the trial court.
With respect to establishment of the defendant's duty, there was no necessity of proving a standard of professional *260 care, within the dictum in Milliken v. Woodward, supra. It does not appear that any question relating to the exercise of any particular degree of skill as a broker was involved in defendant's undertaking with the plaintiff. All he had to do was to effect the insurance or reasonably promptly notify plaintiff that he could not, responsibilities plainly within the competence of any broker or insurance agent, without the need for special proof of that fact. The proofs here give rise to an inference that defendant, notwithstanding his undertaking, did not even realize that the insurance was not in effect when the accident took place. Nor do we have here any claim that there was an absolute obligation to effect the insurance, cf. Grossman v. Calonia Land & Imp. Co., supra. There was only the duty to exercise reasonable care in the matter.
As to the conclusion of the trial court that there was contributory negligence as a matter of law, this was based upon plaintiff's admission that he never read his policies and did not know whether there had been an indorsement to cover the Pontiac car he purchased in February 1952, having left that to the defendant; and that he did not know whether he paid the premiums. But there was evidence that the premiums were paid, and, moreover, that matter is irrelevant to defendant's duty where the undertaking is not expressly conditioned upon the prior payment of premiums. See Marano v. Sabbio, supra. As to the other matters noted by the trial judge, those were in no way related to any cause of the non-coverage status in August 1952 ascertainable from the proofs on plaintiff's case. Since contributory negligence must be shown to be related to the loss as a proximate cause in order to bar the claim, it should not have been invoked against the plaintiff here. At the most, it was for the jury. Cf. Schustrin v. Globe Indemnity Co. of New York, supra.
As further grounds for sustaining the action of the trial court, defendant argues that no contractual relationship was established; also that plaintiff's testimony was so contradictory in essentials as to be unbelievable. In our *261 view the factual testimony reflects a situation instinct with the contractual obligation on defendant's part which plaintiff asserts. We conclude, moreover, that the matter of credibility was for the jury. The alleged confusion as to whether plaintiff was relying upon an agreement in 1949 to keep the insurance in force indefinitely thereafter or upon a new undertaking to effect insurance in 1952, stems from an entirely understandable layman's uncertainty as to legal terminology and conclusions. The jury could have found from the evidence either that there was a general continuing undertaking, accompanied by specific reminders and undertakings in 1952, or an independent specific undertaking in 1952, or perhaps both. The important thing is that the proof warranted a finding that defendant undertook at some time to see to it that plaintiff would be insured in August 1952, or otherwise, impliedly, to advise him to the contrary in time to enable him to obtain protection elsewhere.
Reversed and remanded for a new trial, with costs.