56 N.J. Super. 362 (1959)
153 A.2d 359
TULLIS G. GERALD, PLAINTIFF-RESPONDENT,
v.
UNIVERSAL AGENCY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 22, 1959.
Decided July 15, 1959.
*364 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Benjamin F. Friedman argued the cause for defendant-appellant.
Mr. Wayland A. Lucas argued the cause for plaintiff-respondent.
The opinion of the court was delivered by PRICE, S.J.A.D.
Defendant appeals from a district court judgment in the sum of $1,000 entered in plaintiff's *365 favor in a case tried by the court without a jury. Recovery was based on plaintiff's claim that defendant had breached a duty owing to plaintiff in that it had procured an improper policy of collision insurance, that plaintiff's car had been damaged, and that he had been unable to collect any money under the policy which defendant procured.
It is necessary to review the facts which led to the procurement of the challenged judgment.
Initially plaintiff brought suit in the Superior Court, Law Division, alleging in the first count of his complaint that he obtained a policy of collision insurance from defendant written by United Mutual Automobile Insurance Co. (United); that plaintiff's car sustained collision damage within the terms of the policy, such damage amounting to $1,000; that United refused to reimburse plaintiff for his loss, is insolvent and is not licensed to do business in New Jersey; that plaintiff had been damaged by defendant's breach of its implied contract to exercise skill and training in obtaining the policy. The second count repeated the aforesaid allegations and stated a claim based upon defendant's alleged negligence.
By answer defendant denied a breach of contract, denied any negligence and alleged that any damages sustained by plaintiff were due to the actions of its employee Jack R. Markwith and Frederick R. Hill, a broker through whom Markwith placed the order for the policy. Universal filed a third-party complaint against Markwith and Hill, seeking reimbursement for any sums for which it might be held liable to plaintiff.
At pretrial conference it was stipulated as follows:
"Admitted that policy No. A-15582 issued United Insurance Automobile Co. to plaintiff for coverage from April 25, 1957 to April 25, 1959 for a premium of $134 was effected through defendant's office; and that the loss was within coverage of the aforesaid policy; that the defendant is a duly licensed insurance brokerage in the State of New Jersey. That the United Insurance Automobile Co. was not authorized to transact business in New Jersey."
*366 After pretrial the case was transferred to the district court. At the close of the evidence on the main case Universal moved for a voluntary dismissal of its third-party complaint which motion was granted. Plaintiff then moved for judgment "on the basis of the pleadings, themselves." The trial court entered judgment in favor of plaintiff in the sum of $1,000 (which amount had been stipulated as the amount of the damage to the automobile in question). However, the record before us, which contains the colloquy between court and counsel following the making of plaintiff's motion, reveals that the court's action in entering judgment for the plaintiff was actually based on a consideration of the proofs submitted. Furthermore, the judgment itself shows that it was entered on the "pleadings and proof." Obviously it was not entered pursuant to R.R. 4:12-3. Despite the unsatisfactory nature of the record presented to us for review we consider this appeal as an appeal from a judgment entered by the court on the merits of the case.
Although no specific findings of fact and conclusions of law made by the trial judge pursuant to R.R. 7:16-3 are contained in the record presented to us on this appeal, comment by the court preceding the entry of judgment discloses the reason for his action. He reviewed each paragraph of the complaint, commented on the allegations which had been established by admission, and held that plaintiff had presented sufficient proof to establish defendant's liability.
The evidence disclosed that on April 29, 1957 plaintiff purchased a 1955 Ford automobile from Berglund Motors Auto Co. to be used by his son, 18 years of age. Plaintiff initially sought an insurance policy from defendant Universal Agency, which maintained an office in the showroom of Berglund Motors. Jack R. Markwith, Universal's manager, undertook for his employer to obtain the desired insurance. He testified that he was unable to obtain such insurance from any company licensed in the State of New Jersey. He asserted that the reason for his failure to secure insurance was due to the fact that the companies with which he *367 communicated declined to write such policies if the insured car was to be operated by a male under 25 years of age. He stated that, through his usual channels, he attempted to place the policy with insurance brokers known as the "Crum & Foster Group," but was unsuccessful. He also approached another broker by the name of William A. Carty with a similar result. Markwith then conferred with one Frederick R. Hill, identified by him as a surplus lines broker licensed pursuant to the provisions of N.J.S.A. 17:22-6.21. By said statute such brokers are given authority to procure insurance from companies not authorized to do business in New Jersey provided certain statutory requirements are met. The statutory provisions are as follows:

"17:22-6.21 Surplus line license; placing insurance with insurers not admitted to do business; brokers may deal with licensee
It shall be unlawful for any person, partnership or corporation, directly or indirectly to collect any insurance premium, or to solicit, negotiate, effect, procure, receive, or forward any contract of insurance or renewal thereof, in relation to any property or insurable interest in this State, for any insurer not lawfully authorized to transact business in this State, or in any manner to aid or assist in any such transactions, unless specifically authorized so to do, under a surplus line license issued by the commissioner as provided by this act, except that the holder of an insurance broker's license shall have authority on behalf of a prospective assured to negotiate and deal with the holder of a surplus line license to effect any such transaction, collect the insurance premium therefor from the assured, and receive from the said surplus line licensee a share of any commission or brokerage fee earned by the said surplus line licensee in connection therewith."

"17:22-6.25 Penalties
Any person, persons or corporation violating any of the provisions of this act shall be liable to a penalty not exceeding $1,000.00 for the first offense and not exceeding $2,000.00 for each succeeding offense to be recovered in a summary proceeding as provided in section 17:33-2 of the Revised Statutes."

"17:22-6.29 License to procure insurance from unauthorized companies
The commissioner may issue to any citizen, or corporation, of the State who or which is a licensed insurance broker therein a license permitting such licensee as agent to procure any kind of insurance *368 permitted by the laws of this State, other than life and annuity contracts, from insurers not authorized to do business in this State, subject to the provisions of this act."

"17:22-6.30 Affidavit as to unsuccessful effort to procure insurance from insurers admitted to do business
Before the licensee shall procure any such insurance, he and his co-broker, if any, shall make separate diligent effort to procure from insurers admitted to do business in this State the amount of insurance required and the said licensee shall only procure insurance under the license after he and his co-broker, if any, have procured insurance from insurers authorized to do business in this State to the full amount which such insurers are willing to write on the property or after he and his co-broker, if any, have been unable to procure any of the required insurance whatsoever from such authorized insurers. An affidavit by the licensee describing said diligent effort and the name and address of any co-broker participating in the procurement and an affidavit by the co-broker, if any, describing his said diligent effort, shall be filed with the commissioner by the licensee not later than the last day of the month subsequent to the month in which such insurance was procured."

"17:22-6.31 Qualifications of unauthorized insurance companies; account
The licensee shall not procure any portion of the insurance from an unauthorized insurer other than 1 which is possessed of net cash or liquid assets of at least $300,000.00 and has maintained an unimpaired status during the preceding 12 months or a group of insurers which has on deposit in a bank or trust company in the United States trust funds of not less than $5,000,000.00 for the benefit of policyholders whose policies provide for the payment of premiums and losses in United States currency. Each licensee shall keep a separate account of the business done under the license which shall be at all times open to the inspection of the commissioner, his deputy or any person employed by him to inspect the same."
Markwith testified that the United policy was obtained by him from Hill; that the original was delivered by him to the bank which financed the car's purchase and the copy was delivered by him to plaintiff. According to the policy, received in evidence, United's place of business was stated to be Kansas City, Missouri. It was admitted at the trial that the policy was in force at the time of the accident according to its terms and that the company was not authorized to do business in this State. Plaintiff's testimony *369 that he had not received any payment under the policy was unchallenged. The premium paid for the policy amounted to $134 and was reflected in defendant's invoice addressed to plaintiff. It was paid on his behalf by the financing bank. The invoice was received in evidence. Markwith testified that the aforesaid premium was $30 to $40 higher than that which would be charged if the car in question were to be operated solely by drivers over 25 years of age.
Plaintiff testified that after the accident the damaged car was taken to a garage. Hearsay testimony received without objection purported to show a conference between the owner of the car repair shop, to which plaintiff's car had been taken, and an adjuster on behalf of the company, that an agreement as to "a figure" was reached, but that the company had refused to pay the amount agreed upon by the adjuster because it was too high. Hill did not testify at the trial. Markwith, attempting to show diligence in his efforts to obtain coverage by a company licensed to do business in this State, related his aforesaid unsuccessful efforts in that regard. He further testified that, without relation specifically to the transaction here involved, he had filed at some time prior to plaintiff's request for insurance an affidavit with Hill to the effect that all insurance business sent to Hill by him was so sent only after a diligent effort had been made to place the insurance through his "regular channels." He admitted that no specific affidavit relating to the policy in question or to his efforts to procure the insurance for plaintiff was ever prepared or lodged by him with Hill. Markwith testified that he was unable to state that there were no insurance companies licensed to do business in this State, which might have written the requested insurance.
On appeal defendant asserts that: (a) there was no evidence in the case to establish that defendant was negligent in placing the insurance through a surplus lines broker; (b) there was no proof that defendant breached a contractual obligation; (c) the trial court improperly granted judgment on the pleadings at the end of the case.
*370 The duty owing by an insurance broker to an insured has previously been the subject of consideration by this court. In Schustrin v. Globe Indemnity Co. of N.Y. and Binder, 44 N.J. Super. 462, 466 (App. Div. 1957) we said:
"An insurance broker is one engaged in the business of `procuring insurance for such persons as may apply to him for that purpose.' He is a specialist holding himself out to the world as possessing the skill requisite to his calling, and acts as a middleman between the insured and the insurance company. He is usually the agent of the insured, although his commission is generally paid by the company with which the insurance is placed. Milliken v. Woodward, 64 N.J.L. 444 (Sup. Ct. 1900). If he fails to exercise reasonable skill, care and diligence in effecting the insurance or performing his undertaking, he renders himself liable in damages either for breach of contract or in tort for breach of duty."
In undertaking to procure a policy of insurance the broker has a duty to exercise reasonable skill, care and diligence. Barton v. Marlow, 47 N.J. Super. 255, 259 (App. Div. 1957); Marano v. Sabbio, 26 N.J. Super. 201, 208 (App. Div. 1953). If an insurance broker with a view to compensation places insurance with a company not licensed to do business in the state where the desired coverage is sought, he becomes liable for damages incurred thereby. In 44 C.J.S. Insurance § 172, p. 862 (1945) the general rule is stated to be as follows:
"The agent or broker ordinarily is liable for the resulting damages where, through his negligence or wrongful act, he places the insurance in an insolvent company, or in a nonexistent company, or in a company which is not authorized by law to do business in the state * * *."
Annotation, "Personal Liability of agents or brokers in respect of policies of foreign insurance companies not authorized to do business in the State," 131 A.L.R. 1079 (1941).
Defendant asserts that "the fact that the United Mutual Automobile Insurance Company was not authorized to do *371 business in New Jersey, does not establish negligence, because the statute, R.S. 17:22-6.21 et seq., permits a broker to place a policy through a surplus lines broker in a company not authorized to do business in this State." It further asserts that plaintiff has not presented evidence which would show a violation of the statute.
We hold that if a broker causes an insurance policy to be placed with a company not licensed to do business in New Jersey he may become liable for the resulting damage unless (1) he has first made unsuccessful but "diligent effort" to procure from insurers authorized to do business in this State the amount of insurance required as provided by N.J.S.A. 17:22-6.30; and (2) he has advised the insured that the policy which he delivers to him has been written by a company not authorized to do business in this State.
In the case at bar the trial court was entitled to find, from the evidence, that the defendant had not made such "diligent effort" and it is not disputed that plaintiff was not told by defendant that the policy was written by a company not authorized to do business in New Jersey. We hold that plaintiff was entitled to recover a judgment against defendant. However the question of damages remains to be considered.
Although the parties stipulated that the damage to the automobile was $1,000, that is not necessarily the true measure of damages in the case at bar. If United is an existing solvent company and litigation is feasible in a foreign jurisdiction, the recoverable damages would be limited to the difference in cost between litigation in the foreign jurisdiction and similar litigation in this State. If the company is insolvent or non-existent, or litigation in a foreign jurisdiction is not feasible (including in the determination of that question such items as the amount of the claim, the expense incident to the maintenance of the suit in the foreign jurisdiction, the procedures there available and such other elements as may have peculiar application *372 to the case at bar), the damages would be $1,000. The case is remanded for the presentation of proofs as to such damages and determination by the trial court as to the amount thereof with direction that judgment be entered in favor of plaintiff and against defendant for the amount so determined.