100 N.J. Super. 458 (1968)
242 A.2d 632
DOROTHY FEDER, PLAINTIFF-APPELLANT,
v.
BANKERS NATIONAL LIFE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1968.
Decided April 25, 1968.
*460 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Marvin A. Sachs argued the cause for appellant (Messrs. Feuerstein & Sachs, attorneys; Mr. Allan Maitlin, of counsel; Mr. Peter S. Valentine, on the brief).
Mr. Roger H. McGlynn argued the cause for respondent (Messrs. McGlynn, Stein & Eberiel, attorneys).
PER CURIAM.
The judgment of the Law Division is affirmed. For the facts of the case see the opinion of the trial court, 96 N.J. Super. 483 (Law Div. 1967).
The question of lapse of the policy for nonpayment of premiums is controlled by the reinstatement clause of the general provisions of the policy, the material provisions of which are mandated by the life insurance statute, N.J.S.A. 17:34-15, subd. I., see N.Y. Life Insurance Co. v. Weiss, 133 N.J. Eq. 375, 382 (E. & A. 1943), opinion of Heher, J., *461 dissenting on another point. The material portions of the clause read as follows:
"If this policy shall lapse in consequence of default for more than 31 days in payment of any premium, it may (unless the cash surrender value has been paid or the extended term insurance has expired) be reinstated at any time within 5 years of such default, upon the production of evidence of insurability satisfactory to the Company, and upon the payment of all overdue premiums with interest at 5% per annum, compounded annually, * * *." (Emphasis added.)
There is no ambiguity in this clause. Its clear effect is that reinstatement is conditioned upon payment of all premiums previously due on the policy and not paid during the period between lapse and reinstatement. Under the jury verdict and the evidence in this case, the only premiums paid after the failure of payment, as of September 4, 1962 (end of grace period), of the monthly premium due August 4, 1962, were the two monthly payments made September 11, 1962 and September 14, 1962. Reinstatement of the policy took place September 24, 1962. Under the Reinstatement clause, those payments were inexorably applicable to the unpaid installments originally due August 4 and September 4, 1962. The premium installment originally due October 4, 1962 can thus not be considered to have ever been paid, and the insured died November 10, 1962, more than the grace period of 31 days thereafter. The policy was consequently automatically in a state of lapse on the date of death.
The New Jersey cases are consistent with this rationale, Acacia Mutual Life Assn. v. Kaul, 114 N.J. Eq. 491, 492 (Ch. 1933); N.Y. Life Insurance Co. v. Weiss, supra. While the agreement to reinstate is, in a sense, a separate undertaking from the original policy agreement to pay on death, so that fraud in obtaining reinstatement is subject to an action for rescission, ibid., the reinstated policy, once validly reinstated, revives the original, with all of its terms and benefits to the insured.
*462 Under plaintiff's contentions, the premium payment made September 11, 1962 "covered the initial grace period which went into effect on August 4 and * * * the payment on September 14 covered the period from September 24 to October 24 and upon the nonpayment of the October 24 premium a grace period went into effect which expired on November 24." The difficulty with this analysis is that it fails to provide for payment for the whole of the premium period from September 4 to October 4 established under the original policy, and a portion of that period  September 4 to September 24  would never thereafter be payable or paid. That result clearly contravenes the Reinstatement clause requirement that all overdue premiums shall have been paid upon reinstatement (with interest).
Plaintiff argues that literal enforcement of the Reinstatement clause as postulated above is unjust in that the insured would be required to have paid retroactively a premium for a period of time during which coverage for death did not in actuality exist, the policy having during that period been in a state of lapse. While that fact is true, so far as it goes, the result is not unfair, and the Reinstatement clause clearly contemplates it, since the insured does get the major benefit of preservation of the original age-determined premium rate  a benefit which can be very substantial if lapse and reinstatement take place some years after original issuance or in any case where reinstatement is had close to the expiration of the five-year period allowed therefor after lapse. There are other collateral policy benefits to the insured in the retroactive character of the reinstatement. The policy reinstatement clause obviously must be given a uniform construction, even in cases where lapse and reinstatement follow within a relatively short period after original issuance.
There is no merit in plaintiff's alternative contention of waiver by defendant of the previously consummated re-lapse of the policy as reinstated. The furnishing by the company agent of a proof of claim shortly after death *463 and its immediate signature by the plaintiff, with no attendant trouble, delay or expense on her part, or prejudice to her, represent circumstances which must, as a matter of law, be deemed insufficient to constitute a waiver by the company of its already vested right of exculpation from liability on this $50,000 policy. Cf. Bruni v. Prudential Insurance Company of America, 51 N.J. 408 (1968), reversing on dissenting opinion in Appellate Division, 100 N.J. Super. 154 (App. Div. 1967). It could not reasonably be found on this state of facts that there was an intentional surrender by the company of a known immunity on the policy. Considerations of reliance by or justice to the assured and his beneficiary do not call for a conclusion of waiver on these facts. The negative jury finding on the special interrogatory as to whether the average person would realize from the language of the claim form that the company was not admitting by having the proof executed that there was insurance in force is irrelevant to our conclusions. They would be the same even if the form had no such protective language. The trial judge was correct in his implied post-trial conclusion that the special finding could be disregarded as immaterial. The interrogatory obviously was submitted to the jury out of an excess of caution at a point before the trial judge had had time to arrive at a definitive conclusion as to legal materiality.
We cannot accept the additional argument of the plaintiff that she was prejudiced in the submission to the jury of the last mentioned interrogatory. The argument (as expanded on oral argument) is that the jury might have gotten the impression from the judge's instructions as to the law of waiver that their negative answer to that interrogatory would insure plaintiff's recovery in the action regardless of their negative verdict on the other special interrogatory  that as to whether plaintiff had paid another premium installment on November 7, 1962  and that they consequently might not have been particularly careful in their deliberations on the latter interrogatory. This is argued as plain *464 error, as the point was not made below at any time, nor did plaintiff object to the substantive instructions to the jury on the law of waiver or to the submission of the interrogatories. Moreover, there has been no motion to set aside the verdict on either interrogatory.
We agree with plaintiff only to the limited extent of the observation that it is ordinarily unnecessary and improper for a trial judge to instruct the jury as to the law or the legal effect of their factual findings if all that is to be submitted to them for determination are factual interrogatories, with the legal conclusions thereon to be made by the court alone. Thedorf v. Lipsey, 237 F.2d 190, 193 (7 Cir. 1956); Ward v. Cochran, 71 F. 127, 134 (8 Cir. 1895). But we cannot agree that there was any prejudice to the plaintiff, much less plain error, in the course here followed. We conclude that it may not be surmised that the jury exercised anything but their bona fide best judgment on the proofs in arriving at their special verdict that the alleged November premium payment was not in fact made.
Judgment affirmed.