207 N.J. Super. 12 (1986)
503 A.2d 885
JERRY V. CARBONE, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
NORTH RIVER INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1985.
Decided January 17, 1986.
*14 Before Judges ANTELL, SHEBELL and MATTHEWS.
Bertram M. Light, Jr. argued the cause for appellant.
Ronald G. Schecter argued the cause for respondent (Slavitt, Fish & Cowen, P.A., attorneys; Ronald G. Schecter, on the brief).
The opinion of the Court was delivered by SHEBELL, J.A.D.
Defendant insurance company challenges the Law Division's rejection, on motion, of its defenses to plaintiff's suit to recover for fire damage under a multi-risk policy issued by defendant. It contends there were material issues of fact as to whether the policy was in force or had been cancelled, or whether it was void because of willful concealment or misrepresentations on the part of the plaintiff or its broker. It also maintains the court erred in deciding as a matter of law that the policy provision pertaining to increased hazards did not include moral or financial hazards. Judgment was entered in plaintiff's favor in the amount of $39,778.91 from which defendant appeals.
In February of 1981 defendant issued a policy covering plaintiff's premises for damage caused by fire, as well as other "multi-perils." Coverage was obtained through the Tri-State Agency, which sent plaintiff a bill for $1,190.14 for the first year's premium. Tri-State had obtained the policy through defendant's agent, the Heffner Agency, Inc., and had guaranteed payment of the premiums. Plaintiff did not pay Tri-State's bill for the premium and the policy was cancelled by defendant at Tri-State's request effective May 5, 1981.
Tri-State also procured other insurance for the plaintiff including liability coverage of plaintiff's trucks through another insurance company. Tri-State received a check for $5,000 from plaintiff, payable to Brisco International Agency, to cover vehicle liability insurance, which Tri-State obtained through that broker.
*15 Plaintiff's president met with another insurance broker and learned he could obtain the coverages he needed for less. On March 20, 1981 he wrote Tri-State advising he had engaged another agency to handle the company's insurance as of March 12, 1981.
Thereafter, Tri-State received a $2,137 check from Brisco representing a return of premium on the vehicle liability policy, dated May 8, 1981. Tri-State checked with defendant's agent and was told that although the multi-peril policy with defendant had been terminated it would be reinstated upon payment of premium. Tri-State used $1,190.14 of the vehicle liability return premium and had the multi-peril policy with defendant reinstated. On May 15, 1981 defendant sent to plaintiff the following: "THIS NOTICE OF CANCELLATION IS VOID. THE POLICY REMAINS IN FULL FORCE & EFFECT."
Tri-State sent a statement dated May 28, 1981 advising plaintiff the return premium had been applied to its multi-peril policy with defendant. Plaintiff objected, maintaining it had told Tri-State to cancel its policies. Tri-State maintained that while they were not instructed to reinstate the insurance, neither were they told to cancel it. Plaintiff did not obtain other replacement insurance until June 1, 1981.
On June 27, 1981 there was an explosion and fire on plaintiff's premises. Plaintiff sought to recover for the fire loss from both insurance companies. In October 1981 defendant sent plaintiff a notice cancelling the policy for "underwriting reasons"; however, that notice was subsequently recalled.
Defendant argues that Tri-State had ordered reinstatement and paid the premium without authority from plaintiff and that the policy therefore was not in effect at the time of the loss. We hold this contention to be without legal basis. A party seeking summary judgment has the burden of excluding *16 any reasonable doubt concerning the existence of a genuine issue of material fact. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954), Garley v. Waddington, 177 N.J. Super. 173, 179 (App.Div. 1981). Accepting the facts as defendant presents them and according defendant the benefit of all reasonable inferences, we find the summary judgment complained of to have been proper.
Plaintiff elected to be bound by its agent's acts. Regardless of whether plaintiff's broker acted with plaintiff's authority, either actual or apparent, in applying the returned premium from another policy to defendant's policy, the fact remains defendant accepted the premium and reinstated the policy. Plaintiff was entitled to rely on the notification it received and to consider itself covered by that policy. See Weathers v. Hartford Insurance Group, 77 N.J. 228, 236 n. 2 (1978). While it is true plaintiff obtained other coverage prior to the loss, it did not obtain interim insurance, perhaps in reliance upon the defendant's rescinding of cancellation. We need not, however, base our decision on such questionable reliance.
The obtaining of a new policy of insurance does not bring about a cancellation of an existing policy even if the insured intended that the new policy replace the existing policy, unless that intent is communicated or acquiesced in by the existing insurer. See generally Annotation, "Obtaining new property insurance as cancellation of existing insurance," 14 A.L.R. 4th 781, 783 (1982); e.g., Northeast Ins. Co. v. Concord Gen. Mut. Ins., 461 A.2d 1056, 1059 (Me. 1983). It is irrelevant that plaintiff communicated its intention to terminate the policy to Tri-State. Tri-State was not defendant's agent; thus, notice to Tri-State was not notice to defendant.
Defendant offers no evidence to suggest it was informed of plaintiff's desire to cancel its policy upon replacing it with *17 another. Defendant's policy provided: "This policy may be cancelled by the named insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective." An insured's intent to cancel is not sufficient; the insurer must receive actual notice of cancellation. 6A Appleman, Insurance Law and Practice, § 4226 at 659 (1972); 43 Am. Jur.2d, Insurance, § 408 at 478.
It is generally recognized that an insured may ratify, even after a loss, a policy procured without its authority or knowledge. See Annotation, "Insured's ratification, after loss, of policy procured without his authority, knowledge, or consent," 52 A.L.R.3d 235, 246 (1973). Therefore, since defendant North River received the premium and reinstated the policy prior to the loss, having no reason to believe coverage was not desired by plaintiff Carbone, it is bound by its representation of coverage where plaintiff took no steps to disaffirm to defendant any unauthorized conduct on the part of plaintiff's agent Tri-State in reinstating the policy.
Defendant contends its policy provision pertaining to willful concealment and misrepresentation was violated because plaintiff's president testified at his deposition in the case that to his knowledge he had not received any cancellation notice for the February 23, 1981 cancellation, whereas in his certification dated November 17, 1983 he asserted he received the notice of cancellation in late April of 1981. This position is without merit.
In order to void a policy the claimed misrepresentation "must be tainted with the fraudulent purpose to deceive." Kozlowski v. Pavonia Fire Ins. Co., 116 N.J.L. 194, 196 (E. & A. 1935). A false statement or concealment within the contemplation of such a clause must be material to the risk or loss. In *18 view of our determination of the coverage cancellation question, the alleged misrepresentation of plaintiff's president cannot be deemed material to the risk or loss.
We find no basis for defendant's assertion that Tri-State, as plaintiff's agent, concealed numerous facts. As stated in Kozlowski, 116 N.J.L. at 197-198:
"Concealment" is the designed and intentional withholding of a fact material to the risk, which the assured, in honesty and good faith, ought to communicate to the underwriter. While there is authority for the view that the intention is immaterial where the concealment relates to a matter made the subject of a specific inquiry, it seems to be the settled rule that, where no inquiry is made, the concealment must be tainted with a fraudulent intent. Brighton v. North River Insurance Co., 106 N.J.L. 10; 14 R.C.L. 1025; 26 C.J. 156, 157. "Mere silence on the part of the assured, especially as to some matter of fact which he does not consider it important for the underwriter to know, is not to be considered as such concealment...." [Citation omitted].
The trial judge properly found against defendant on this issue.
The policy of insurance contained a provision that the company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured unless the policy otherwise provides in writing. Defendant offered evidence to support its contention that plaintiff's financial condition was deteriorating in 1981 in an attempt to establish that such hazards increased the risks. Defendant refers to the increased risk of hazard here as being a "moral" risk urging that deteriorating financial condition raises the risk or probability that the insured will destroy or permit to be destroyed the insured property for the purpose of collecting the insurance. We refuse to accept such a concept; we find no authority for such a view and consider it to be against sound public policy. See Charles Stores, Inc. v. Aetna Insurance Company, 490 F.2d 64, 68 (5th Cir.1974); Wallace v. Employers Mut. Cas. Co., 443 So.2d 843, 849 (Miss. 1983); 5 Appleman, supra, § 2941 at 5.
We affirm the judgment.