195 N.J. Super. 390 (1984)
479 A.2d 444
GINA A. DIMARINO, PLAINTIFF,
v.
RUBIN WISHKIN, D/B/A RUBINS VALET SERVICE, DEFENDANT AND THIRD PARTY PLAINTIFF-RESPONDENT,
v.
SIDNEY KATZ, THIRD PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 26, 1983.
Decided August 8, 1984.
*391 Before Judges FRITZ, FURMAN and DEIGHAN.
*392 Horn, Kaplan, Goldberg & Gorny, attorneys for appellant (John J. Markwardt, on the brief).
Morgan E. Thomas, attorney for respondent.
The opinion of the court was delivered by FRITZ, P.J.A.D.
This is an appeal from an interlocutory order certified by the trial judge as a final judgment  improvidently, we believe  pursuant to R. 4:42-2. It is brought by an insurance broker and agent[1] who, on the trial of a severed third party action in a negligence case, was adjudicated to be responsible to the third party plaintiff, "under either a contract or tort theory," for damages "measured by providing ... a protection he would have had if the insurance had been placed as agreed." The broker appeals. We affirm.
Defendant and third party plaintiff Wishkin operated a laundromat. Plaintiff was injured on the premises. Katz, the third party defendant and appellant, operated an insurance agency and had first written insurance for Wishkin around 1970. In November 1978 the property and affairs of Wishkin's insurance company were taken over by the Superintendent of Insurance of the State of New York and all policies, including that of Wishkin, were cancelled, effective December 13, 1978. Katz received a notice of this on November 27, 1978.
The trial judge expressly found as a fact, as evidenced by his letter opinion supplementing his oral opinion at the conclusion of the trial, that prior to the accident alleged to have *393 occurred on January 19, 1979, "through his wife, Wishkin discussed with Katz the cancellation of the insurance, and requested Katz to effect a replacement policy. Katz undertook to do so." (Emphasis supplied.) Wishkin was uninsured on the date of the accident. The findings of the trial judge might reasonably have been reached on sufficient credible evidence in the whole record and we will not disturb them. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974).
Katz argues here that he had no absolute duty to provide coverage, that his undertaking to attempt to secure insurance did not impose upon him "additional responsibilities." We think this view overlooks the realities of the relationship between Katz and Wishkin. Implicit, if not express, in the findings and conclusions of the trial judge is the fact that Wishkin reasonably thought himself to be assured of coverage by virtue of the Katz promise. As the trial judge said:
In the instance [sic] matter, it is clear that Katz undertook to procure the insurance, and in fact, informed Wishkin that the liability insurance was difficult to obtain because it was being sought by itself and not as a part of a broader coverage package. It is clear that Katz at no time informed Wishkin that he would not be able to place the subject coverage, and that, from their prior dealings and relationships Wishkin relied upon Katz not only to effect the coverage, but to advance the premium payment and then submit a bill for reimbursement to Wishkin.
In these circumstances we consider the failure of the broker to produce the coverage or else warn the client at once that coverage could not be obtained constitutes a failure to exercise the requisite skill or dilligence required of a broker to the same extent as would have obtained had there been a failure to issue a policy which the broker promised to procure. This is certainly within the spirit, if not the letter, of Bates v. Gambino, 72 N.J. 219, 225 (1977). It is notable that the Supreme Court in Bates effectively characterized the standards set forth there as minimums, eschewing any limitation of a broker's liability to the three circumstances set forth there. We consider that, in view of the relationship, the assurances *394 given Wishkin by Katz were, in legal effect, no less than those of Marano v. Sabbio, 26 N.J. Super. 201 (App.Div. 1953).
In the second and third points of his brief, Katz argues that "plaintiff failed to present the necessary proofs relating to the standard of care to be exercised" by Katz and that the trial court "did not make the findings of fact relative to comparative negligence required by N.J.S. 2A:15-5.2." In the first place both these points ignore the fact that while the trial judge was not as explicit about the matter as he might have been, his judgment was grounded in contract as well as tort.
Beyond this, were we to consider the negligence aspect and the argument of the broker respecting the absence of expert testimony, we would observe that the standard of care to be exercised by a broker in the circumstances, as noted above, has as a matter of law certain established minimums. Bates v. Gambino, supra. In the event of a failure to comply with these minimums, expert testimony is not necessary to establish the culpability of an insurance broker.
Finally, Katz argues that the trial court improperly considered the broker's successful effort to obtain coverage after the date of the loss. We are persuaded that this point is clearly without merit. R. 2:11-3(e)(1)(A) and (E).
Satisfied, then, that the trial judge should be affirmed in his determination, we turn to another matter we find particularly disturbing. As we noted at the outset, we are convinced that the certification of the judgment as a final judgment pursuant to R. 4:42-2, thus permitting an appeal from an interlocutory order as a matter of right, R. 2:2-3(a), was improvident. In a frequently quoted article, "Interlocutory Appeals," 92 N.J.L.J. 161 (March 13, 1969), Justice (then Judge) Sullivan established succinctly the guideline for the granting of leave to appeal by an appellate court from an interlocutory order. He said, "[T]he power to permit an interlocutory appeal is sparingly exercised and leave is granted only in the exceptional case where, on a balance of interests, justice suggests the need for review of the *395 interlocutory order in advance of final judgment." Aware that a certification under R. 4:42-2 by the trial judge is tantamount to the granting of leave to appeal from an interlocutory order, we observe that this standard is no less compelling in the trial courts than in the appellate courts. As Justice Sullivan pointed out, there is a strong policy against piecemeal adjudication of controversies. The public interest is in favor of uninterrupted proceedings at the trial level, a process that permits a single and complete review. Inconvenience, expense and delay result from the fragmentation of the trial process and should be avoided unless there are compelling reasons. R. 4:42-2 was not designed as a device whereby a trial judge might check the correctness of his rulings at intermediate steps along the way. The comment to the Rule points out not only "that it is only a distinct and separate claim which can be made final under this rule," but describes the intention of the Rule as "clearly to permit execution on a partial judgment fully adjudicating a separable claim for affirmative relief or all claims by and against a single party." Pressler, Current N.J. Court Rules, Comment R. 4:42-2, at 776 (1983).
It is to be seen that by R. 4:42-2 certification and a subsequent appeal, the trial judge deprives himself of his ability to adjust the interlocutory order, should circumstances of law or fact suggest such an adjustment, prior to the entry of the final judgment on the whole case. It therefore also deprives the trial judge of the first instance opportunity to correct his own errors.
Additionally, irresponsible use of the Rule may require the determination of substantial and difficult legal issues in advance of any necessity for such a determination, in cases in which that necessity is obviated on the merits trial. It is fundamental that appellate courts should avoid deciding issues of law which have far-reaching effects until the necessity arises to decide such issues.
*396 Appeals are expensive to litigants. This expense should be avoided or at least consolidated in a final appeal at which all issues can be reviewed unless there is an urgent necessity for the earlier review.
We enjoin the trial bench to hearken to the wisdom of Justice Sullivan and avoid R. 4:42-2 certification in the absence of "compelling reasons" to the contrary.
The judgment below is affirmed.
NOTES
[1] For the difference in the duties between a broker and an agent, see Citta v. Camden Fire Insurance Assoc., Inc., 152 N.J. Super. 76 (App.Div. 1977). In the matter before us it is abundantly clear that Katz' relationship with Wishkin was that of a broker. For instance, according to Katz' testimony, if Wishkin was late with a premium payment, Katz "would send our own premium up to make sure the policy was in force." There is no doubt that Katz held "himself out to the public and [was] engaged by [Wishkin] for [his] insurance needs." Citta, supra, at 79.