708 A.2d 747

RENA, INC. AND PETER TYRIS, PLAINTIFFS–RESPONDENTS/ CROSS–APPELLANTS, v. T.W. BRIEN, UNDERWRITERS AT LLOYD'S, LONDON, FOR HIMSELF AND ON BEHALF OF ALL OTHER UNDERWRITERS SUBSCRIBING TO POLICY NO. 91QKY046–699, DEFENDANTS/THIRD–PARTY PLAINTIFFS– APPELLANTS/ CROSS–RESPONDENTS, v. GEORGE TYRIS, MICHAEL TYRIS AND PETER TYRIS, THIRD–PARTY DEFEN- DANTS–CROSS–APPELLANTS.

FORKED RIVER HOUSE, INC., A NEW JERSEY CORPORATION, PLAINTIFF–INTERVENOR–RESPONDENT/CROSS–APPEL- LANT, v. RENA, INC., PETER TYRIS, GEORGE TYRIS, MI- CHAEL TYRIS, MYLA RESTAURANT INC., UNDERWRITERS AT LLOYD'S OF LONDON, QUAKER AGENCY INC., AND SHELDON, MATLACK, KNIPE ASSOCIATES, INC., DEFEN- DANTS–RESPONDENTS/ CROSS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 28, 1997—Decided April 17, 1998.

Before Judges KEEFE, PAUL G. LEVY and WECKER.

*Lawrence A. Dugan* (*Morrison, Mahoney & Miller*) of the Massachusetts bar, admitted pro hac vice, argued the cause for appellant/cross-respondent T.W. Brien, Underwriters at Lloyd's, London (*Gennet, Kallmann, Antin & Robinson* and *Mr. Dugan*, attorneys; *Stanley W. Kallmann* and *Mr. Dugan* on the brief).

*Alan C. Milstein* argued the cause for respondents/cross-appellants Rena, Inc. and Peter Tyris (*Sherman, Silverstein, Kohl, Rose & Podolsky,* attorneys; *Mr. Milstein,* on the brief).

*Thomas P. Butz* argued the cause for respondent/cross-appellant Forked River House, Inc. (*Schuman, Butz & Babcock,* attorneys; *Mr. Butz* on the brief).

*Christopher P. Leise* argued the cause for respondents/cross-appellants Sheldon, Matlack, Knipe Associates, Inc. (*White and Williams,* attorneys; *Mr. Leise* and *Lynda M. Cicco* on the brief).

The opinion of the court was delivered by

WECKER, J.A.D.

This opinion addresses cross-appeals in A–3102 from two judgments granted at the end of all the evidence in this jury trial pursuant to *R.* 4:40.[1] In the first part of this opinion, we address the appeal of T.W. Brien, Underwriters at Lloyd's, London (Lloyd's) from a judgment entered in favor of plaintiffs Rena, Inc.

---

[1] The appeal in A–3311, which arose out of the same trial, was consolidated for oral argument. After argument, we were advised that the parties to A–3311 have reached an amicable settlement of all issues raised in that appeal. The appeal in A–3311 is therefore dismissed with prejudice.

and Peter Tyris and third-party defendants George Tyris, Michael Tyris and Peter Tyris (collectively "Tyris" or "the Tyris parties"). The judgment held Tyris entitled to payment on a fire insurance policy issued by Lloyd's covering property leased by Tyris from the owner, plaintiff-intervenor Forked River House, Inc. The trial judge determined that Lloyd's had failed to prove its arson defense to the Tyris parties' declaratory action for coverage and therefore awarded judgment to Tyris on the policy. Because the arson defense was submitted to the jury and the jury found that Lloyd's did prove that the Tyris brothers procured someone to set the fire, we reverse and remand for entry of judgment in favor of Lloyd's on the policy.

In the second part of this opinion, we address the appeal of Forked River House from a judgment in favor of defendant Sheldon, Matlack, Knipe Associates, Inc. ("Matlack"), the insurance broker who placed the policy, for failure to name Forked River as an insured on the Tyris fire insurance policy. At the close of all the evidence, the court dismissed Forked River's negligence claim. We affirm, although our reasons differ from those of the trial judge.

The issues in the appeals before us arise out of a fire on April 26, 1992, at a bar and restaurant known as the Forked River House, in Forked River, New Jersey. The fire broke out after 4 a.m. in the morning, the restaurant and bar having closed at about 2:30 that night. At the time, the restaurant was owned and operated by Tyris. However, the real estate was owned by an unrelated corporation, Forked River House, Inc., whose principal was George Mackres. Tyris had purchased the business from Mackres in 1978, signing a promissory note for a substantial portion of the purchase price and entering into a long-term lease on the premises. In 1985 Tyris sold the business and assigned the lease to a third-party. However, when that party was unable to pay under the terms of the sale, the business reverted to Tyris along with the lease. Tyris, either directly in the name of two of the brothers or through a newly-formed corporation named Rena,

Inc., continued to operate the restaurant business. However, the Tyris parties fell behind in their payments on the note as well as the lease. On March 17, 1992, Mackres and Tyris entered into a new agreement incorporating the Tyris parties' obligations under the 1978 promissory note and lease between them.

## I

When the insurance coverage case was tried, the evidence before the jury included the following. The insurance policy issued by Lloyd's to Tyris covered fire damage to the building in the face amount of $500,000 for the building and $100,000 for the contents. The policy, however, included an exclusion in the event of damage resulting from "any fraudulent, dishonest or criminal act done by or at the instigation of any insured, partner or joint adventurer in or of any insured, an officer, director or trustee of any insured. . . ." It is undisputed that if the fire was intentionally caused by or at the direction of any of the Tyris parties, the resulting damage would not be covered under this policy.

The jury heard undisputed evidence that an accelerant was used to spread the fire, and that the fire had been set intentionally. In addition, the jury heard testimony that Peter Tyris was the last one out of the restaurant that night, that he took another employee home, and that when he returned, the restaurant was on fire. Two persons who lived on the premises, one the mother of the Tyris brothers and the other a cook in the restaurant, died in the fire. Local fire officials and the county prosecutor's office undertook an arson investigation. Lloyd's began its own investigation as well. There was substantial evidence that the Tyris brothers were actively engaged in several businesses, each of which had serious financial problems in the months before the fire.

The jury also heard testimony from an employee at another restaurant owned by the Tyris brothers in Cherry Hill. The employee, Stephan Kotzker, testified that about six weeks before the fire, George Tyris asked him if he knew anyone who could help

with "Jewish lightening"[2] at his place at the shore. Kotzker ended the conversation and immediately repeated it to another employee, Ronald Banks. Banks testified at the trial, corroborating that Kotzker had told him of George Tyris's request. Kotzker also testified that shortly after the fire he heard Michael Tyris, in the presence of George and Peter at one of their restaurants, say "Oh my God my mother wasn't suppose [sic] to be there. Peter should have had them out of there. Oh, I can't believe this is happening."

The parties stipulated that the damage caused by the fire exceeded the face amount of the policy, and that if Lloyd's was liable, the full $500,000 would be payable for the structure and $100,000 for the contents. There was also testimony offered both by Tyris and Mackres that the Tyris brothers did not set the fire, denied any involvement in the fire, were not in financial difficulty, had no motive to cause the fire, and that Kotzker's testimony was unreliable and untrue. Thus the facts surrounding the Tyris parties' responsibility for the fire, either by setting it themselves or by obtaining someone else to set the fire, were very much in dispute at trial.

At the close of all the evidence, and despite the disputed state of the evidence, the trial judge granted Tyris's *R.* 4:40–1 motion for judgment against Lloyd's on the arson defense. The judge initially questioned whether Lloyd's was bound by the testimony of its adjuster, who had expressed the belief that Peter Tyris himself set the fire, to the exclusion of the alternate theory that one or more of the Tyris brothers arranged for someone else to set the fire. The judge does not appear to have ruled on this basis, and the record clearly reflects that throughout the pretrial and trial of this matter, Lloyd's maintained either that one of the Tyris brothers himself set the fire or that one or more of them arranged for the fire to be set.

---

[2] The term Kotzker attributed to George Tyris was one Kotzker apparently understood to refer to intentionally setting a fire.

■ However, in granting the motion against Lloyd's, the trial judge improperly weighed the credibility of the Kotzker testimony. Tyris had objected to Kotzker's testimony about the Michael Tyris statement on the ground of surprise. Kotzker had been named in answer to interrogatories as a person with relevant knowledge. To the extent that the specific statement attributed to Michael Tyris had not been revealed in discovery, any prejudice was dispelled when the judge gave Tyris the opportunity to depose Kotzker before he testified in front of the jury. Tyris did not take his deposition, and after a hearing pursuant to *N.J.R.E.* 104, Kotzker was permitted to testify. Nevertheless, in ruling on the motion for judgment, the judge stated:

> This court had the opportunity to observe this witness during the Rule 104 hearing out of the presence of the jury and his contradictory statements presented to the jury. While the inconsistency was alluded to during the trial, the jurors did not have the opportunity to observe his demeanor during the Rule 104 hearing and compare it to that during the trial before the jury. This court had the unusual ability to make that observation.

Only if all of the testimony against Tyris had been incredible, such that reasonable minds could not differ, would a motion for judgment have been warranted. That was hardly the case here, and it was error to weigh the evidence as the judge did.

■ On a motion for judgment under *R.* 4:40–1, the standard is the same as that for determining a motion for judgment notwithstanding the verdict under *R.* 4:40–2, or for determining a motion for involuntary dismissal under *R.* 4:37–2(b). The court must accept as true all evidence supporting the position of the non-moving party, according that party the benefit of all legitimate inferences that can be deduced from such evidence. If reasonable minds could differ, the court must deny the motion. *See Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 535–36, 666 *A.2d* 146 (1995); *Dolson v. Anastasia,* 55 *N.J.* 2, 5–6, 258 *A.2d* 706 (1969). In light of the procedural events in this case, it must be emphasized that *R.* 4:40–2(a) specifically provides:

> The court may reserve decision on a motion for judgment made at the close of all the evidence, submit the case to the jury and then decide the motion either before or within 10 days after the verdict, or if no verdict is returned, within 10 days after

the jury's discharge. The court may enter judgment in accordance with the motion or in the interest of justice order a new trial.

If the trial judge had substantial doubts about the sufficiency of the credible evidence, reserving decision would have been appropriate.

■ With respect to the substantive elements of arson as a defense to a civil claim for fire insurance coverage, the burden of proof upon the insurance company is to prove by a preponderance of the evidence, circumstantial or direct, "that plaintiff either set fire to the buildings or caused such to be done." *Crossley v. Allstate Ins. Co.,* 139 *Mich.App.* 464, 362 *N.W.*2d 760, 762 (1984). The Michigan Court of Appeals in *Crossley* noted that judgment rendered by the court rather than by a jury is "especially suspect where motive and intent are at issue, or where the credibility of a witness or deponent is crucial." *Id.* (citations omitted). That observation is equally applicable here, where the arson defense depends on circumstantial evidence and turns entirely on the credibility of such evidence. *See, e.g., Great American Ins. Co. v. K. & W. Log, Inc.* 22 *Wash.App.* 468, 591 *P.*2d 457, 459–60 (1979) (holding that the arson defense can be proved by a preponderance of entirely circumstantial evidence).

■ This court has previously addressed the nature of the arson defense and the quality of the evidence necessary to support that defense. *See Italian Fisherman, Inc. v. Commercial Union Assurance Co.,* 215 *N.J.Super.* 278, 521 *A.*2d 912 (App.Div.), *certif. denied,* 107 *N.J.* 152, 526 *A.*2d 211 (1987); *Olesak v. Central Mutual Ins. Co.,* 215 *N.J.Super.* 155, 160, 521 *A.*2d 849 (App.Div. 1987) ("The arson defense is most accurately viewed as an allegation that the insured purposely created the loss and therefore should not benefit from it.") *See also Alexander v. Tennessee Farmers Mut. Ins. Co.,* 905 *S.W.*2d 177, 179 (Tenn.Ct.App.1995) ("To succeed on a defense of arson, an insurance company must show by a preponderance of the evidence (1) that the loss was due to a fire of incendiary origin, (2) that the insured had an opportunity to set the fire, and (3) that he had a motive to do so.") It

matters not whether the jury determines that the insured personally set the fire or did so through the acts of another. The key is that the insured caused the fire to be set. *See Don Burton, Inc. v. Aetna Life and Cas. Co.*, 575 *F*.2d 702 (9th Cir.1978); *Crossley, supra*, 362 *N.W.*2d at 762. In *Don Burton*, the Ninth Circuit explicitly rejected "the notion that a defense of arson can be defeated by a failure to prove that the insured himself was the incendiarist. . . ." 575 *F*.2d at 705.

After granting judgment against Lloyd's, the judge decided to submit the arson issue to the jury in two questions, asking first whether the Tyris brothers set the fire, and if not, whether they procured someone else to do so. The judge explained that in case the court's judgment of dismissal was in error, the case would not have to be retried. In that respect, the judge's decision was sound, and the jury was thereafter fully and correctly charged on the arson defense:

> Plaintiff made a claim under the policy and some—Plaintiffs Tyris brothers—made a claim under the policy. And some months later, the Defendant insurance company refused to [make] payment claiming that the Tyris brothers conspired to set the fire to the Forked River House, which was accomplished by Peter Tyris or someone procured by the Plaintiff to commit arson.
>
> That as a result of their action, that is, the actions of the Tyris brothers or the person procured by them, the Forked River House burned to the ground and resulted in the deaths of two people, one of whom was Kiki Tyris, the mother of the Tyris brothers, the other, as I understand it, was a baker on the premises.

> . . . .

> Defendant has alleged that it's not liable to Plaintiff Tyris brothers because they arranged for or instigated the fire which damaged the property. On this issue, it is the insurance company's burden to prove to you by a preponderance of the evidence that the fire was set or caused to be set by Plaintiff. And there again, we're talking about the Tyris brothers.

> . . . .

> You must be convinced from the evidence that either the Plaintiffs set fire to the premises or that it was done through their procurement or connivance. Any finding that the Plaintiffs intentionally set this fire must not rest on speculation or conjecture but must be based on logical deduction from the facts proven by the Defendant.

. . . .

It is proper for you to consider circumstantial evidence to support your finding of arson by the Plaintiff. However, conjecture, guess, or suspicion standing alone are not sufficient for you to prove that they set the fire or that they procured others to set the fire.

. . . .

In order to conclude that the insured caused or procured the fire, you the jury must believe by a preponderance or the greater weight of the evidence that one, that the fire was a result of arson, two, the insured had ample motive, and three, the insured had an opportunity to start the fire.

. . . .

If you determine the fire was deliberately and intentionally set, you must next then determine whether or not the Plaintiffs in this case were responsible for the setting of this fire. Responsibility for the setting of the fire would include not only the situation where Plaintiffs actually set the fire themselves, but would also include the situation where the fire was set by someone else but with the knowledge, consent, and approval of the Plaintiffs.

In this case, Defendant Lloyd's claim that the fire that damaged the subject premises and its contents was caused willfully and maliciously by the Plaintiffs or by others with their knowledge, connivance, consent, or approval, and with the intention of getting the money for the policy from Lloyd's.

In order for Defendant Lloyd's Underwriters to prevail on the defense of arson, Lloyd's must prove to you by a preponderance of the evidence that the fire was intentionally set by or at the direction of the Plaintiffs.

### The jury answered three special interrogatories as follows:

1. Did defendant Lloyd's prove that Peter, Michael or George Tyris set the fire?

 Yes——No_X

If no, go to next question. If yes, cease your deliberations and advise the court.

2. Did defendant Lloyd's prove that the Tyris brothers procured someone to set the fire?

 Yes_X_No——

Regardless of your answer go to question 3.

3. Have plaintiffs proved defendant Lloyds exercised bad faith in refusing to pay the claim?

 Yes——No_X

If your answer is no, cease your deliberations and advise the court. If your answer is yes, go to the next question.

Thus the jury found that Lloyd's did not prove that any of the Tyris brothers himself set the fire, but did prove that the Tyris brothers procured someone else to set the fire.

Lloyd's filed a post-trial motion for reconsideration of the judgment, which was denied. In a written opinion incorporating and reiterating the reasons given on the record for the decision to grant judgment to Tyris on the coverage issue, the judge said:

> ... there was insufficient evidence presented by [Lloyd's] which, taking all the facts and inferences and considering them most favorably to the defendant that a jury would find that the plaintiff Tyris brothers collectively or individually procured someone other than themselves to set fire to the Forked River House.

It is thus clear that the judge's weighing of the Kotzker testimony impacted the outcome.

Even after granting judgment to Tyris, the judge had the opportunity to correct the error by granting the motion for reconsideration in light of the jury's answers to the special interrogatories. The jury after all was totally unaware of the judge's ruling, and the judge had given the correct jury instructions with respect to the arson defense. There was no prejudice occasioned by the proceedings up to that point, and the jury's verdict could have been molded promptly into the correct judgment. *See Almog v. Israel Travel Advisory Service, Inc.*, 298 *N.J.Super.* 145, 159–60, 689 *A.*2d 158 (App.Div.) *certif. granted*, 151 *N.J.* 463, 700 *A.*2d 876 (1997), *appeal dismissed*, 152 *N.J.* 361, 704 *A.*2d 1297 (1998), where during jury deliberations, the trial judge erroneously concluded that Israeli law applied and that, because Israeli law allowed no jury, he would render a bench verdict. Because the judge did not interfere with the jury's deliberations, did not inform the jury of his actions, and allowed the jury to reach its own verdict, we concluded that the jury verdict should be deemed to constitute the final judgment. In *Almog* we addressed the question whether a so-called advisory jury's verdict "is ever susceptible of elevation as the judgment in the cause," and recognized that the usual reasons for declining to do so were not present. *Id.* at 159–60, 689 *A.*2d 158. Those circumstances are equally absent here. Specifically, all parties tried the case to the

jury. Because the judge's decision to grant the motion came after the entire case had been presented, the decision could not have affected trial strategy in any way. Just as in *Almog,*

> The lawyers proceeded tactically on the understanding that this was a jury trial, as did the court. Nor did the jurors have any inkling during their deliberations that their status was anything but that of ultimate finders of the facts. That was what the judge had told them, and that is how they proceeded.... Thus, nothing to the contrary said by the trial judge entered into or affected or tainted the way the lawyers tried the case to the jury or the way the jury deliberated. In effect, this jury never functioned as or was constituted or denominated as an advisory jury. Consequently, there is no prejudice we can perceive in accepting the jury's fact-finding as the final verdict.
>
> [*Id.* at 160, 689 *A.*2d 158.]

Moreover, the judge specifically explained that the arson question would be submitted to the jury to avoid the potential for a retrial in the event this court reversed the judgment for Tyris. No one objected to that procedure at the trial, and everyone understood that in the event of a reversal the jury's verdict would control, as it should.

We therefore reverse the judgment for Tyris and against Lloyd's and remand for entry of judgment in favor of Lloyd's with respect to coverage for this fire.

## II

Forked River appeals the judgment dismissing its claims against Matlack. Forked River's complaint alleges negligence against Matlack,[3] in that Matlack was a licensed insurance broker holding itself out as having the skill and knowledge of a professional in the field; that Matlack was engaged by Tyris to obtain fire and extended coverage for the premises "including coverage, as an additional insured" for Forked River; that Matlack "knew

---

[3] Matlack's notice of cross-appeal incorrectly refers to the "ninth and tenth counts" of Forked River's complaint. It is actually the twelfth count that alleges negligence against Matlack. The thirteenth count, also against Matlack, alleges third party beneficiary status with respect to Matlack's "contract" with the Tyris parties. We find no need to separately consider such a claim, in light of our disposition of the negligence count.

or should have known of the necessity of including Forked River House, Inc. as the owner of the premises as an additional insured on the policy of insurance, and . . . owed a duty of care to Forked River . . . to exercise reasonable skill, care and diligence in securing the insurance policies in question, together with the appropriate coverages;" that Matlack failed to include Forked River "as a named additional insured;" and that as a result, Lloyd's refused to pay Forked River under the policy. We are satisfied that judgment in favor of Matlack must be affirmed, although for different reasons than those expressed by the trial judge.

## A.

Both parties to this appeal argue the proximate cause issue in terms of whether Forked River would or could have had any status greater than a "loss payee" had Matlack complied with a request to "name" or "put" Forked River on the policy. As we said in *Liberty Mutual Fire Ins. Co. v. Kahlaid, Inc.*, 199 *N.J.Super.* 494, 497, 489 *A.2d* 1231 (App.Div.), *certif. denied*, 101 *N.J.* 300, 501 *A.2d* 958 (1985)

> A loss payee is not an insured but only "a mere appointee [of the insured] who may not recover if the insured has breached any provision of the policy which would prevent recovery by him." *Highway Trailer Co. v. Donna Motor Lines, Inc.*, 46 *N.J.* 442, 447, 217 *A.2d* 617 *cert. den.*, 385 *U.S.* 834, 87 *S.Ct.* 77, 17 *L. Ed.2d* 68 (1966). If the loss is not payable to the insured, it is not payable to the loss payee.

The proximate cause issue actually posed by this case is whether Forked River, even if it had been named as an insured on the policy, could have collected the policy once Tyris' fraud by way of arson had been proved. Neither the parties nor the judge correctly identified that issue, which is resolved against Forked River by the insurance contract itself.

The judge dismissed Forked River's claim for lack of expert testimony to dispute Matlack's expert testimony with respect to loss payee status and the absence of proximate cause. In finding a lack of proof of proximate cause, the judge relied upon Michael Matlack's trial testimony that even if Forked River had been

named as an "additional insured" on the policy, its status would have been no higher than that of a "loss payee" and would therefore have been subject to the arson defense. In light of our decision today with respect to the arson defense, loss payee status clearly would not have protected Forked River.

The judge also relied on a misperception that Matlack's retained expert, John T. Klagholz, concurred in Michael Matlack's opinion. In fact Klagholz admitted on cross-examination that a landlord can be a named insured and not merely a loss payee on a tenant's policy. Although Forked River did not offer testimony, expert or otherwise, in support of the proposition that it could have been separately named as an insured on the Lloyd's policy, or more importantly, that as an innocent named insured its claim for coverage would not have been defeated by the co-insured's arson, Matlack's own expert, Klagholz, supplied the testimony the judge found lacking in plaintiff's case.

Matlack originally moved for dismissal at the conclusion of Forked River's case pursuant to *R.* 4:37–2(b), arguing that (1) Forked River did not present expert testimony that Matlack owed any duty to inquire into the ownership of the restaurant premises; and (2) Forked River could not establish that a breach of such a duty, if it existed at all, was a proximate cause of injury because Forked River could only have been named as a loss payee. The judge rejected the first argument, saying "with respect to the duty in general, I think it was his duty to ascertain the interest of the parties." However, the judge also ruled "with the exception of that one issue as to loss payee or [additional insured], I'm going to reserve on that...." The Rules of Court do not permit reserving decision on a motion for judgment at the end of plaintiff's case, but only at the end of all the evidence. *R.* 4:40–2(a). *See Joseph Hilton & Associates, Inc. v. Evans,* 201 *N.J.Super.* 156, 165–66, 492 *A.*2d 1062 (App.Div.) *certif. denied,* 101 *N.J.* 326, 501 *A.*2d 977 (1985); *Castro v. Helmsley Spear, Inc.,* 150 *N.J.Super.* 160, 375 *A.*2d 274 (App.Div.1977); Pressler, *Current N.J. Court Rules,* comment 2 on *R.* 4:37–2 (1998). The purported reservation must

be deemed a denial. *Joseph Hilton, supra,* 201 *N.J.Super.* at 166, 492 *A.*2d 1062; *Castro, supra,* 150 *N.J.Super.* at 164, 375 *A.*2d 274. The judge explicitly chose to hear the testimony of Matlack's expert. Once defendant's evidence was heard, the court had to consider *all* the evidence supporting Forked River's claim, as the party resisting the motion for judgment.

Klagholz provided sufficient testimony, when combined with the policy application described by Michael Matlack, that Forked River could have been an additional named insured on the policy. The policy application itself included a space under "applicant information" for the following:

Name (*first Named Insured & Other Named Insureds* )

[Emphasis added.]

On direct examination, Klagholz testified that based on his

understanding of the facts in this case, both in terms of the testimony, as well as the objective documents, indicate that after the fact, after the fire, what was requested or would have been requested was loss payee. That would be perfectly appropriate and consistent with the designation of an additional interest under a property policy.

. . . .

Q. Hypothetically speaking, if somebody had said additional insured—Mr. Tyris had said additional insured, would your opinion change with respect to the landlord?

A. No, because in practice what ordinarily happens is an additional insured, for purposes of a property insurance policy, is not a usual or may be even relevant term. There may be additional named insureds. There may be named insureds, you know, that are on the policy, a whole bunch of entities designated there. But additional insured is a liability term not a property term, so that in the completion of this application for property insurance, additional interest is the relevant term, and that would, based on the documents here, as I've mentioned, be a loss payee.

On cross-examination, however, Klagholz clearly admitted that a landlord could be a "named insured" on a tenant's casualty policy:

Q. So both of those individuals, the owner as the landlord, and the tenant as a tenant, had the right as an insured to have an insurable interest and be named as a named insured on the policy. Isn't that right?

A. As a named insured. Yes. That's right.

Q. And, as a matter of fact, if we look at DS–2 which is the commercial application, there's a reference on here on that form under applicant information.

It says quote on the printed form, "Name." "First named insured," and "Other named insured."

A. That's right.

Q. And that category on the form is there so that the applicant can give the names of anyone who would have an interest in the property. Is that correct?

A. Anyone who has an interest in the property and is intended to be named on the policy. Yes.

. . . .

Q. But, Mr. Klagholz, if I'm the owner I could insist that I wanted to be named as a named insured, and not as a loss payee. Couldn't I?

A. That's right.

In dismissing Forked River's claim against Matlack, the judge stated in part:

> We have now had 2 experts testify that in a situation such as this he would only be considered as a loss payee. There being no expert testimony to the contrary, and since he would be standing in the shoes, I'm going to grant his motion for an involuntary dismissal based on that issue.

Thus the dismissal was based upon an inaccurate perception of Klagholz's testimony.

For purposes of our analysis, we assume that Matlack's failure to recognize that his client's landlord could be a "named insured" established his failure to meet a "general level of competence." *See Bates v. Gambino*, 72 *N.J.* 219, 225, 370 *A.*2d 10 (1977) (it is a principle of negligence law that "there exists a fixed standard of conduct irrespective of the actual conduct of others"). The Court in *Bates* held that plaintiff was not required to prove "any conceptualized standard of professional competence" where the defendant insurance broker admitted he was unaware of the regulation requiring temporary fire insurance coverage to be made available under the circumstances in that case. *Id.* at 226, 370 *A.*2d 10. If lack of expert testimony that Forked River could have been named as an additional insured were the only basis for the dismissal, we would be constrained to reverse. But the difference between a loss-payee and an additional named insured is actually of no significance here. Our conclusion that Matlack's failure to name Forked River on the policy did not cause Forked River's lack of coverage is based upon the policy itself.

In *Howell v. Ohio Cas. Ins. Co.*, 130 *N.J.Super.* 350, 355–56, 327 A.2d 240 (App.Div.1974), we held that arson by one spouse did not bar recovery by the innocent spouse under a general fraud exclusion. We then said:

> With respect to a fire insurance policy covering the interests of more than one insured, however, *there is much to commend the view that, unless the terms thereof are plainly to the contrary and in some fashion clearly called to the attention of the insureds*, the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent co-insureds to the extent of their respective interests in the property involved.
>
> [Emphasis added.]

Indeed, coverage is determined by the terms of the insurance contract, and interpreting the contract is a legal question for the court. *Adron, Inc. v. Home Ins. Co.*, 292 *N.J.Super.* 463, 473, 679 A.2d 160 (App.Div.1996) ("[t]he interpretation of an insurance contract is a question of law for the court to determine").

■ The language of the Lloyd's policy exclusion was plain. It excluded coverage for damage resulting from "any fraudulent, dishonest or criminal act done by or at the instigation of *any insured* . . . ." (emphasis added). There is no ambiguity. The exclusion applies to any insured once any other insured—in this case, the Tyris brothers—is found to have procured someone to set the fire that destroyed the restaurant. Forked River therefore could not prove that it would have recovered as an innocent insured even if it had been a "named insured" on the policy.

> An increasing number of courts, however, hold that the right of innocent coinsureds to recover after fraud or misrepresentation by an insured is based upon the language of the insurance policy. Thus, a provision voiding a policy for willful and fraudulent misrepresentation by "the insured" before or after a loss voids the policy only for the person(s) responsible for the fraud and not for innocent coinsureds. On the other hand, a provision voiding a policy for fraud or misrepresentation by "any insured" expresses an intent to create joint obligations, therefore prohibits recovery by innocent coinsureds.
>
> [5A John Alan Appleman and Jean Appleman, *Insurance Law and Practice* § 3594 (Supp.1997) (footnotes omitted) ].

*See also* 5 Appleman, *supra*, § 3113 (1970 and Supp.1997); 10A *Couch on Insurance* § 42:680 (2nd rev. ed.1982 and Supp.1997); 18 *Couch on Insurance* § 74:663 (2nd rev. ed.1983 and Supp.1997);

Note, *Property Insurance and the Innocent Co–Insured: Was It All Pay and No Gain for the Innocent Co–Insured?* 43 *Drake L.Rev.* 893, 899–902, 904 (1995); Larry D. Scheafer, Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured,* 11 *A.L.R.*4th 1228 (1982).

There is substantial direct support in other jurisdictions for enforcing an explicit, unambiguous policy exclusion where damage is caused by "any fraudulent, dishonest or criminal act done by or at the instigation of any insured. . . ." *See Spezialetti v. Pacific Employers Ins. Co.,* 759 *F.*2d 1139 (3rd Cir.1985) (Pennsylvania law) (where policy denied coverage for loss caused by dishonest act of "any" insured, innocent co-insured is precluded by co-insured's arson from recovering fire insurance proceeds); *Amick v. State Farm Fire and Cas. Co.,* 862 *F.*2d 704 (8th Cir.1988) (Missouri law) (provision that innocent co-insured could not recover if any other insured had committed fraud is not void as against public policy, and owner cannot recover when grandson, who is additional insured, set fire to house); *Sales v. State Farm Fire and Cas. Co.,* 849 *F.*2d 1383 (11th Cir.1988) (Georgia law) (fraud exclusion voiding fire policy if "any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance" bars recovery by innocent co-insured wife when husband who filed claim concealed his involvement in fire); *McCauley Enterprises, Inc. v. New Hampshire Ins. Co.,* 716 *F.Supp.* 718 (D.Conn.1989) (where policy excluded coverage for loss of personal property occurring as a result of any fraudulent, dishonest, or criminal act by "any insured," innocent insured cannot recover); *State Farm Fire and Cas. Ins. Co. v. Kane,* 715 *F.Supp.* 1558 (S.D.Fla.1989) (fire policy which excluded coverage for loss caused by any insured's criminal act precludes recovery by innocent insureds, landlord and tenant, after tenant's president committed arson); *Bryant v. Allstate Ins. Co.,* 592 *F.Supp.* 39 (E.D.Ky.1984) (where policy unambiguously excluded coverage for arson by co-owner, innocent wife is not entitled to proportional share of policy proceeds); *American Family Mut. Ins. Co. v.*

*Bowser,* 779 *P.*2d 1376 (Colo.Ct.App.1989) (where policy excluded coverage for any loss "arising by or at the direction of any insured," innocent co-insured wife cannot recover); *Vance v. Pekin Ins. Co.,* 457 *N.W.*2d 589 (Iowa 1990) (whether arson by one co-insured spouse bars innocent co-insured spouse from recovering depends upon the insurance contract, and where policy stated that it did not insure for loss arising out of acts committed by or at direction of "an insured," all insureds are barred from recovery if any insured committed arson); *Woodhouse v. Farmers Union Mut. Ins. Co.,* 241 *Mont.* 69, 785 *P.*2d 192 (1990) (policy exclusion for loss caused by intentional act of insured bars innocent insured from recovering for personal property destroyed by co-insured's arson); *Fernandez v. Cigna Property and Cas. Ins. Co.,* 188 *A.D.*2d 700, 590 *N.Y.S.*2d 925 (1992) (under policy's intentional act exclusion, innocent wife is precluded from recovery if husband set fire); *Short v. Oklahoma Farmers Union Ins. Co.,* 619 *P.*2d 588 (Okla.1980) (party owning property jointly with an arsonist cannot recover under insurance contract provision declaring policy to be void in case of fraud or false swearing on part of insured, irrespective of marital relationship); *McAllister v. Millville Mut. Ins. Co.,* 433 *Pa.Super.* 330, 640 *A.*2d 1283, *appeal denied,* 539 *Pa.* 653, 651 *A.*2d 540 (1994) (where fire insurance policy excludes coverage for losses resulting from negligent or intentional acts committed by "any insured" or "an insured," coverage is properly denied to all insureds if one is guilty of arson); *Dolcy v. Rhode Island Joint Reinsurance Ass'n,* 589 *A.*2d 313 (R.I.1991) (under policy exclusion for intentional losses committed by or at direction of "an" insured, husband's arson bars recovery by innocent, non-collusive wife); *K & W Builders, Inc. v. Merchants and Business Men's Mutual Ins. Co.,* 495 *S.E.*2d 473 (Va.1998) (policy provision that "[a]ny act or neglect of any person other than you beyond your direction or control will not affect this insurance," "you" includes both insured lessee and additional insured lessor; thus, lessee's conduct in setting fire to building and misrepresenting facts to insurer precludes recovery by innocent lessor).

Several jurisdictions permit an innocent insured to recover despite arson by another insured where there is no unambiguous policy exclusion, thus indirectly supporting the enforcement of an unambiguous policy exclusion against an innocent insured. *See Haynes v. Hanover Ins. Cos.*, 783 *F.*2d 136, 138 (8th Cir.1986) (Missouri law) (absent contractual provisions to the contrary, an expectation that the carrier had undertaken a severable and distinct obligation to each insured's individual interest in the property should be honored); *Courts of the Phoenix v. Charter Oak Fire Ins. Co.*, 560 *F.Supp.* 858 (N.D.Ill.1983) (where fire insurance policy included no broad exclusion for fraud of an insured, innocent shareholders are not barred from recovering proportionate share of proceeds); *McFarland v. Utica Fire Ins. Co. of Oneida County, N.Y.*, 814 *F.Supp.* 518 (S.D.Miss.1992) *aff'd*, 14 *F.*3d 55 (5th Cir.1994) (ambiguous intentional acts exclusion does not bar recovery by innocent insured for damages caused by wrongful acts of co-insured); *Opat v. State Farm Fire and Cas. Ins. Co.*, 542 *F.Supp.* 1321 (W.D.Pa.1982), *aff'd*, 755 *F.*2d 922 (3rd Cir.1984) (exclusion "in case of fraud or false swearing by the insured" refers only to the insured who is responsible for causing the loss and is seeking to recover under the policy, and not jointly to all the insureds); *Atlas Assur. Co. of America v. Mistic*, 822 *P.*2d 897 (Alaska 1991) (innocent insured is not barred where policy contained no exclusion for losses caused by intentional act of any insured); *American Economy Ins. Co. v. Liggett*, 426 *N.E.*2d 136 (Ind.Ct.App.1981) (where no policy language supported an exclusion, innocent wife is entitled to full recovery); *Hildebrand v. Holyoke Mut. Fire Ins. Co.*, 386 *A.*2d 329 (Me.1978) (policy provision voiding contract if "insured" willfully concealed or misrepresented any material fact or circumstance or in case of any fraud by "insured," "insured" means insured who was responsible for causing loss; whether husband and wife's interests are deemed joint or several is irrelevant); *Morgan v. Cincinnati Ins. Co.*, 411 *Mich.* 267, 307 *N.W.*2d 53 (1981) (provision voiding policy in event of fraud by "the insured" applies only to insured who committed fraud and has no application to any other person described in

policy as an insured); *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.*, 401 *N.W.*2d 381 (Minn.1987) (unless forbidden by insurance contract, innocent insured partners may recover their proportionate interest despite intentional destruction of partnership property by another partner); *McGory v. Allstate Ins. Co.*, 527 *So.*2d 632 (Miss.1988) (absent policy provision excluding coverage because of deliberate wrongful act of one co-insured, innocent co-insured may recover); *DePalma v. Bates County Mut. Ins. Co.*, 923 *S.W.*2d 385 (Mo.Ct.App.1996) (since policy had no provision barring such recovery, innocent spouse is entitled to recover for loss caused by husband's alleged arson); *Krupp v. Aetna Life & Cas. Co.*, 103 *A.D.*2d 252, 479 *N.Y.S.*2d 992 (1984) (in absence of explicit language excluding coverage, innocent co-insured spouse cannot be foreclosed from recovery on property damaged by spouse's arson); *Maravich v. Aetna Life and Cas. Co.*, 350 *Pa.Super.* 392, 504 *A.*2d 896 (1986) (where fire policy did not define whether interests of husband and wife, as insureds, were joint or separate, and policy did not unequivocally exclude coverage for innocent spouse, innocent wife can recover although she continued to live with arsonist husband); *McCracken v. Government Employees Ins. Co.*, 284 *S.C.* 66, 325 *S.E.*2d 62 (1985) (in the absence of any statute or specific policy language denying coverage for the arson of co-insured, innocent co-insured is entitled to recover); *Spence v. Allstate Ins. Co.*, 883 *S.W.*2d 586 (Tenn.1994) (where homeowners insurance policy was ambiguous, innocent co-insured can recover despite wrongful acts of another insured).

The overwhelming number of cited cases involve an innocent spouse seeking to recover for damages caused by the arsonist spouse. If an unambiguous policy exclusion is enforceable against an innocent spouse, *a fortiori* it must be enforceable against an unrelated insured, such as the landlord of an arsonist tenant. Thus, the exclusionary provision in Lloyd's policy would bar any recovery by Forked River due to Tyris' wrongdoing.

Clear, unambiguous policy language excluding all fire coverage if *any* insured intentionally causes the fire is overcome only where

controlling legislation prohibits such an exclusion. *See, e.g., Ponder v. Allstate Ins. Co.,* 729 *F.Supp.* 60 (E.D.Mich.1990) (ambiguous provision voiding coverage if "any insured" intentionally concealed or misrepresented any material fact must be reformed to conform with fraud clause in Michigan standard fire policy, which protects an innocent insured despite alleged fraud of co-insured); *Osbon v. National Union Fire Ins. Co.* 632 *So.2d* 1158 (La.1994) (under Louisiana statute, innocent insured is not barred from coverage for loss caused by spouse's arson, and fire insurance policies must conform with statute by providing equivalent or greater coverage); *Williams v. Auto Club Group Ins. Co.,* 224 *Mich.App.* 313, 569 *N.W.2d* 403 (1997) (policy exclusion for loss caused by or at direction of "an insured person" is unenforceable as to innocent co-insured spouse; statute states that standard fire insurance policy did not permit innocent co-insured to be deprived of coverage for alleged arson by her spouse); *Watson v. United Servs. Auto. Ass'n,* 551 *N.W.2d* 500 (Minn.Ct.App.1996), *affirmed and remanded,* 566 *N.W.2d* 683 (Minn.1997) (under Minnesota's statutory standard fire insurance policy, coverage is excluded for individual co-insured who intentionally caused loss or committed fraud, but coverage is not excluded for innocent co-insured; nonconforming policies are subject to reformation).

New Jersey law has no such statutory prohibition applicable to the Lloyd's policy.[4] We are satisfied that even if Matlack had named Forked River on the policy as requested, the Lloyd's policy exclusion would control, and Forked River therefore would have no claim against Lloyd's.

---

[4] There is no dispute that Lloyd's is a surplus lines carrier. It is therefore governed by the Surplus Lines Law, *N.J.S.A.* 17:22–6.40 et. seq., and regulations enacted thereunder, *N.J.A.C.* 11:1–34.1 et. seq., as well as the Commercial Insurance Deregulation Act of 1982, *N.J.S.A.* 17:29AA–1 et seq. We have confirmed with the Department of Insurance that Lloyd's was authorized to issue the policy in the form before us. See Letters of Steven M. Zalewitz, Assistant Chief Insurance Examiner, Surplus Lines Examining Officer dated March 4, 1998 and March 12, 1998, attached as Appendix A–1 and A–2.

## B.

Our inquiry is not limited to the proximate cause issue as defined by the trial court. Contrary to Matlack's contention both at trial and on appeal, the trial judge correctly, though implicitly, found that Matlack owed a duty to Forked River once Matlack knew, or should have known, that Forked River was the owner of the property and that Tyris had a lease obligation to provide a casualty policy naming Forked River. Having found that Matlack's breach of that duty was not the proximate cause of harm to Forked River, we have considered whether Matlack's duty extended any further. We conclude it did not.

Whether a professional owes a duty of care to another, and the scope of such duty, are legal questions that implicate "basic fairness under all of the circumstances in light of considerations of public policy." *Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993). "The principle that duty is defined not by the contractual relationship between the parties but by considerations of foreseeability and fairness is equally applicable in the insurance context." *Carter Lincoln–Mercury, Inc., Leasing Div. v. EMAR Group, Inc.*, 135 *N.J.* 182, 196, 638 *A.*2d 1288 (1994) (insurance broker's duty to evaluate and inform insured regarding financial stability of insurer extended to others for whom protection was intended, including as yet unnamed loss-payees).

A professional's duty, even to persons other than direct clients, has been recognized with respect to attorneys, accountants, and insurance brokers in certain circumstances. *See, e.g., Petrillo v. Bachenberg*, 139 *N.J.* 472, 655 *A.*2d 1354 (1995) (attorney for seller of real estate owed duty to purchaser not to provide misleading information upon which purchaser foreseeably relied); *H. Rosenblum, Inc. v. Adler*, 93 *N.J.* 324, 461 *A.*2d 138 (1983) (accounting firm that furnished audit report of publicly traded corporation owes duty to all foreseeable recipients who rely on that report). Indeed, an insurance broker or agent has been held to have "a duty of care not only to the insured with whom the broker contracts but also to other foreseeable parties injured by

the broker's or agent's negligence." *Carter Lincoln–Mercury, supra,* 135 *N.J.* at 196, 638 *A.*2d 1288. *See also Eschle v. Eastern Freight Ways, Inc.,* 128 *N.J.Super.* 299, 306, 319 *A.*2d 786 (Law Div.1974).

Such a duty owing by an insurance broker to persons other than the direct client has long been recognized. *See Rider v. Lynch,* 42 *N.J.* 465, 201 *A.*2d 561 (1964). In holding an insurance broker liable to his client's father for failure to procure a liability policy that would cover the father, whom the broker should have known the client reasonably expected to be covered, the Court described the duty of an insurance broker:

> One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.

> . . . .

> Thus, an insurance broker, in dealing with his clients, ordinarily invites them to rely upon his expertise in procuring insurance that best suits their requirements. It is not necessary for the client in order to establish a breach of duty to prove that he laid out for the broker the elements of a contract of insurance. It is sufficient to show that he authorized procurement of the insurance needed to cover the risks indicated and that the broker agreed to do so but failed or neglected to perform his duty. The terms of the contract to procure the insurance, the scope of the risk and subject matter to be covered, may be found by implication. The principal does not sue on a contract of insurance; he seeks recovery for the loss occasioned by the failure to procure such a contract or such a valid contract. Moreover, if the broker agrees to obtain or to try to obtain the coverage he knows or should know the principal seeks, and he finds that he cannot procure it, he is bound to notify his principal of that fact with reasonable dispatch.

> [42 *N.J.* at 476–77, 201 *A.*2d 561 (citations omitted) ].

In *Carter Lincoln–Mercury,* the Supreme Court teaches that the duty described in *Rider* is not limited to potential third party claimants on the insured's liability coverage, but may extend as well to foreseeable victims on first party casualty losses. The

Court there said "[t]he duty owed to a loss-payee derives from the duty owed to an insured." 135 *N.J.* at 204, 638 *A.2d* 1288.

The 1978 lease between Forked River and the Tyris parties, later incorporated by reference into the March 17, 1992 agreement between them, established Tyris' duty to Forked River with respect to insurance:

> In addition to the monthly rental payments, the tenants shall pay fire and extended coverage insurance on the demised premises during the entire term of the lease in an amount equal to the full insurable value of all buildings and improvements thereon, but in no event less than the assessed value of said buildings and improvements for purposes of taxation, written by a reliable insurance company or companies authorized to do business in the State of New Jersey. *The policy shall be written in the names of and for the benefit of the Landlords and Tenants, as their respective interest [sic] may appear.*
>
> [Emphasis added.]

There is no evidence, however, that Matlack was ever shown the lease. Nor does the record reveal any evidence, by expert testimony or otherwise, that the Lloyd's policy as written would not have satisfied the lease requirement, if Forked River had been identified as the landlord and named on the policy as an insured. Because we have concluded that Forked River would have been in no better position as a named co-insured on the policy, we consider whether Matlack owed a broader duty to Forked River.

Mackres' testimony was clear regarding his conversations with Lavene and/or Michael Matlack. Mackres testified that he repeatedly asked that Forked River be named on the Tyris policy as the landlord and property owner. Mackres and George Tyris both testified that they requested Martin Lavene to "put" Forked River on the policy as owner, and Chemical Bank as the mortgagee. There is nothing in the record to suggest that Mackres asked anything more of Lavene or Matlack. That is, he never asked for advice about the policy terms or the choice of coverage.

Assuming as we do that Matlack owed some duty to Forked River, we do not find a duty here to do more than name Forked River on the policy as requested. *See Weinisch v. Sawyer,* 123 *N.J.* 333, 338, 587 *A.2d* 615 (1991), where the Court reinstated a verdict for the insurance company and its agent, based upon a

factual finding after a bench trial "that plaintiff did not rely on Sawyer as his insurance consultant to arrange for the highest coverages available; rather, plaintiff himself determined the extent of coverage and used Sawyer to implement the coverages plaintiff had selected." Nor do we find that Matlack had a duty on these facts to "call to the attention of [Forked River]" the fraud exclusion in the Lloyd's policy, as we may have suggested in *Howell, supra,* 130 *N.J.Super.* at 355–56, 327 *A.2d* 240. The situation here differs from cases such as *DiMarino v. Wishkin,* 195 *N.J.Super.* 390, 479 *A.2d* 444 (App.Div.1984). There the evidence supported a finding that the broker "undertook to procure the insurance," making .his "failure ... to produce the coverage *or else warn the client at once that coverage could not* be obtained [ ] a failure to exercise the requisite skill or diligence...." *Id.* at 393, 479 *A.2d* 444 (emphasis added). By contrast, it is undisputed here that Matlack told Mackres he could not even put Forked River's name on the policy without instructions from Tyris, and Mackres knew he never received a policy naming Forked River as an insured. As we have already explained, naming Forked River would not have avoided the fraud exclusion in the Lloyd's policy.

In *Carter Lincoln–Mercury* the broker's failure to properly investigate the financial stability of the insurance carrier was a dereliction of duty to the broker's insured and thus to the secured lender who was the loss-payee. Imposing a duty to warn the insured, if no stronger carrier offered the required coverage, is far different from imposing a duty to warn that the coverage provided would be void if·another insured were to commit fraud upon the insuror. We do not draw the boundaries of the "zone of a foreseeable injured party" quite so broadly. *See Carter Lincoln– Mercury, supra,* 135 *N.J.* at 198, 638 *A.2d* 1288 (quoting *Impex Agricultural Commodities Div. v. Parness Trucking Corp.,* 576 *F.Supp.* 587, 591 (D.N.J.1983)).

We are satisfied that the result is not unfair or unjust under all the circumstances. Mackres himself was admittedly aware, at

least as of July or August 1991, that Tyris was in default on the lease, including the insurance provision of paragraph twenty-eight. In or about October 1991, a representative of Chemical Bank contacted Mackres requesting proof of insurance coverage. Indeed, Forked River's suit for possession filed in the Special Civil Part of Superior Court in the fall of 1991 alleged Tyris's default under paragraph twenty-eight.

Mackres clearly testified that he owned other properties; that he had insurance through another broker on those properties; that months before the fire, Peter Tyris showed him the declarations sheet for the Lloyd's policy, and he saw that neither Forked River nor Chemical Bank was named on the policy. Mackres also testified that he "made a conscious decision not to buy insurance ... because it was *their* obligation to buy the insurance." (Emphasis added.) On cross examination, Mackres repeated his decision:

Q. Didn't you also testify you didn't buy your own insurance because you had no money to buy insurance because they were behind on the rent?

A. Who had no money?

Q. You. Didn't you give that testimony?

A. When you say you don't have no money or you don't want to spend the money. It's something different. I can always go to the bank and borrow money, Mr. Leise, like I've been doing for three and a half years to keep this place afloat.

Q. You'll agree, though, that that's the testimony you gave. You did not have money to buy your own insurance.

A. What I meant was I didn't want to lay out the money.

We therefore conclude that as between Matlack and Mackres, *no reasonable jury could find Matlack's negligence, if any, to be 50% or more responsible for Forked River's lack of coverage.* See *N.J.S.A.* 2A:15–5.1. Mackres's failure to consult his own insurance broker and to obtain separate coverage, after his repeated inability to obtain assurance of the coverage he claimed under the lease, satisfy us that a reasonable jury could reach no other conclusion but that Mackres' own conduct was more than 50% responsible for Forked River's lack of coverage. See Judge Baime's concurring and dissenting opinion in *Yun v. Ford Motor Co.,* 276 *N.J.Super.* 142, 160–61, 647 *A.2d* 841 (App.Div.1994),

*rev'd,* 143 *N.J.* 162, 669 *A.*2d 1378 (1996) (adopting the dissenting portion of Judge Baime's opinion). Recognizing that "[o]rdinarily questions of proximate cause are left to the jury for its factual determination ... [and] [l]ikewise, questions of intervening cause are generally within the jury's domain," *id.,* we nevertheless conclude that reasonable persons could not differ on these facts. Where the outcome is clear, there is no reason to put the parties or the court to the burden of a retrial. *See Brill, supra,* 142 *N.J.* at 541, 666 *A.*2d 146.

We affirm the judgment dismissing Forked River's claims against Matlack.